The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ANNELISE FARNES, a person,<br><br>               Plaintiff,<br><br>   v.<br><br>METROPOLITAN GROUP PROPERTY<br>AND CASUALTY INSURANCE<br>COMPANY, dba as MetLife, an insurance<br>company,<br><br>               Defendant. | NO.  2:18−cv−01882−BJR<br><br><br>**PLAINTIFF'S RESPONSE TO<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

## I. INTRODUCTION

Defendant's motion for summary judgment should be denied. Defendant MetLife wrongfully denied payment for damaged and stolen items worth approximately $80,000. MetLife never disputed that the destructive burglary was covered. Instead, MetLife denied payment after 12-months solely on the basis that Plaintiff Farnes was barred from filing a lawsuit. This was a reprehensible experiment to avoid payment on a legitimate insurance claim. The terms of the subject insurance contract did not allow MetLife to refuse payment.

Homeowner policies regularly have 12-month lawsuit limitation clauses and homeowner insurance claims commonly require more than 12-months for resolution. As a

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 1

NO.  2:18−cv−01882−BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

result, insurers frequently negotiate claim payments after a 12-month lawsuit limitation has expired. MetLife's position, if endorsed by this Court, would prevent homeowners from receiving payment on covered claims. This would be disruptive to the homeowner insurance industry because it would force insurers and insureds into lawsuits concerning claims that, ordinarily, they have been able to resolve without litigation.

Moreover, it was MetLife's conduct that caused the delay in Farnes' submission of her list of damaged items. MetLife failed in its duty to instruct Farnes on what details she needed to include in her list. Once Plaintiff received directions from a third-party, Plaintiff generated and provided a sufficiently detailed list in less than two months.

## II. FACTS

### A.      It is undisputed the burglary and vandalism were covered

On October 10, 2016, Farnes returned home to discover her house had been the subject of a destructive robbery by unknown persons. (Declaration of Annelise Farnes.) Farnes felt particularly vulnerable to the home intrusion, robbery, and destruction because she is an amputee who suffers from bone cancer in her hips and leg. (*Id.*) Just prior to the burglary, Farnes had returned from Los Angeles where her physicians informed her of the bad news that her tumors were inoperable. (*Id.*)

The insurance contract covered both "Theft" and "Vandalism or Malicious Mischief". (Declaration of Joel Hanson, Exhibit A at Metclaim_000497.) No exclusions applied. (*See id.*) MetLife agreed the damage was covered and there is no coverage dispute based on any exclusions in the policy. (*See* Dkt. No. 15 at 19, lines 12-13.)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 2

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

**B.      MetLife made the claim process difficult and failed to guide Farnes through the process for obtaining benefits**

MetLife treated Farnes poorly while processing her insurance claim. (Farnes Decl.) For example, they repeatedly pressured her to move back into her house before the repairs were finished. (*Id*.) They continued to pressure her to move back into the house even after she submitted three letters from her physician warning that it was not safe for her to move back into the house until the repairs were finished. (*Id*.) Being an amputee with bone cancer puts her at a high risk of injury from falling.

MetLife also failed to assist Farnes with the process of generating a detailed inventory list of all the damaged and stolen items. (*Id*.)

**C.      Due to MetLife, Farnes needed outside assistance to prepare a detailed list of the damaged and stolen items**

Around March 2017, Farnes located a public adjuster[1] named David Forte. (Declaration of David Forte.) This was after more than 12 months had passed from the date of the burglary and vandalism. (*Id*.) Farnes could not afford to pay Forte for his time, but he gave her some basic assistance free of charge. (*Id*.) Forte provided Farnes with instructions on how to prepare a sufficiently detailed inventory list and how to submit a Proof of Loss form in order to request payment. (*Id*.) Once Farnes had these instructions, she acted fast to prepare a detailed inventory list of all the items. (*Id*.) Forte also assisted her with a depreciation calculation for the items.

---

[1] An 'adjuster' is an insurance industry professional who processes an insurance claim and issues payments. Typically, an adjuster is an employee of the insurance company. An 'independent adjuster' is someone who is temporarily hired by an insurance company to assist with an insurance claim due to staffing issues. A 'public adjuster' is an independent professional who is hired by the claimant to represent their interests during the insurance claim process.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 3

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

(*Id.*) Then, less than two months after Farnes met Forte, she sent the completed Proof of Loss and inventory list to MetLife. (*Id.*)

If MetLife had given Farnes the guidance that Forte gave her, she would have been able to submit her inventory list within the first 12-months after the robbery. (Farnes Decl. ¶ 9.)

### D.  MetLife used the 12-month lawsuit deadline as the sole basis for denying payment for covered damage

Farnes sent MetLife a Proof of Loss and inventory list in April 2018. (Hanson Decl. Ex. B.) MetLife says it received the Proof of Loss and inventory list on April 26, 2018. (Hanson Decl. Ex. C.) The total cost of replacing all the items was estimated to be $165,905. (Hanson Decl. Ex. B.) This significantly exceeded the $80,236 that MetLife had paid for the personal property loss. (Hanson Decl. Ex. D.) One month later, on May 25, 2018, MetLife adjuster Dean Bellefuille sent a letter to Farnes which stated:

> We hereby reject this Proof of Loss and deny further payment to you under this claim on the basis of the suit limitation within the Form HP7000 0902 of the policy reading in pertinent part:
>
> GENERAL CONDITIONS
>
> "9. Lawsuits Against Us. No suit or action may be brought against us by you unless there has been full compliance with all of the policy terms.
>
> Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.
>
> Under Section II of this policy, no one may sue us until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of you, the injured person and us.
>
> No one shall have any right to make us a party to a suit to determine your liability."

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 4

NO.  2:18−cv−01882−BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

(Hanson Decl. Ex. C.) This subject insurance claim involves Section I, not Section II, of the contract. (*See* Hanson Decl. Ex. A at Metclaim_00497) Section II concerns liability claims against the insured, Farnes, which is not an issue in this case. (*See id.* at Metclaim_508.) The May 25, 2018 denial letter was clear that MetLife was rejecting payment solely on the 12-month deadline for "any suit or action seeking coverage". (Hanson Decl. Ex. C.)

MetLife took the troubling position that, since it (wrongfully) believed that Farnes could not sue it, MetLife felt it could deny payment without any ramification. But nothing in the policy allowed MetLife to abandon its contractual duties 12 months after the loss. Filing a lawsuit and negotiating a payment are two entirely different things.

Moreover, the 12-month lawsuit deadline only applied to "suits or actions seeking coverage". (Hanson Decl. Ex. C.) MetLife agreed that Farnes' robbery was covered and that coverage has never been in dispute. As MetLife's motion for summary judgment acknowledges, "it is undisputed that the only denial that occurred is the denial communicated in MetLife's May 2018 letter."  So, there was no legitimate coverage dispute here. (Dkt. No. 15 at 19, lines 12-13.)

Finally, as discussed in the legal authority below, Washington law allows insurance claimants to bring lawsuits after the expiration of contractual deadlines because the duty of good faith, the Consumer Protection Act, and the Insurance Fair Conduct Act all have statutes of limitation that are greater than one year. MetLife's position was both factually and legally incorrect.

E.    **Insurers commonly make payments more than 12 months after a loss due to the nature of homeowner insurance claims**

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 5

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

12-month lawsuit deadlines are common in homeowner insurance policies because they are allowed by statute. *See* RCW 48.18.200. Despite the ubiquity of 12-month lawsuit deadlines, insurers typically continue to pay claims even after the lawsuit deadline has passed. (Decl. Forte ¶ 10.) Homeowner insurance claims commonly exceed 12 months and payments are commonly negotiated after the first 12 months of the claim. (*Id*.) Claims are often lengthy due to the time for repairs, permitting delays, the need to involve experts, and the invocation of the Appraisal clause, among other things. (*Id*.) Testimony in other cases by an employee of MetLife and another insurance company confirm that homeowner insurance claims often require more than 12 months to resolve. (*See, e.g.,* Dkt. No. 22 at 17-18 and 21-22.)

During his career in the insurance industry, Forte has never before seen an insurance company use a lawsuit deadline as a basis for rejecting a Proof of Loss or denying a claim payment. (Forte Decl. ¶ 10.)

**F.     The subject insurance contract contemplated that the insurer would make payments more than 12 months after a loss**

Insurance policies often require that the homeowner fully repair or replace the damaged property before they are entitled to receive full payment on the claim. This is one of the reasons claim payments must continue to be made after more than 12 months have passed. In this case, the contract provided:

> 2. **If you repair or replace the damaged or destroyed property, you may make further claim for any additional payments for Replacement Cost Settlement provided:**
> a. you have not reached the applicable limit of liability;
> b. you still have an insurable interest in the property;
> c. you notify us within 180 days after the date of actual cash value payment of your decision to repair or replace the damaged or destroyed dwelling or private structure;

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 6

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

d. you notify us within 30 days after the repair or replacement has been completed; and

e. **the date of completion is within one year from the date of actual cash value payment**.

The foregoing time limitations shall apply unless you or your representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.

(Hanson Decl. Ex. A at Metlife_000503.) (Emphasis added.) This provision allowed the insured to recover the full cost of repair or replacement as long as they completed repairs within one year after receiving the "Actual Cash Value" (ACV) payment from MetLife.[2] MetLife's records show that its first Actual Cash Value payment to Farnes for the dwelling damage was issued on October 13, 2016, three days after the loss. (Hanson Decl. Ex. D.) There were nine supplemental payments, but MetLife's Statement of Loss does not say whether any of those subsequent payments were ACV payments. (*Id.*) Regardless of whether the October 13, 2016 payment date is used as the starting point, or another payment date is used, the deadline for repairs came more than 12 months after the date of loss.

The replacement cost provision also allowed the insured to seek more than one year to replace their property if there was a "reasonable justification for the failure to comply with such time limitation." (Hanson Decl. Ex. A at Metlife_000503.)

Additionally, the contract included Loss of Use coverage for expenses such as a rental house. (*Id*. at Metlife_000492.) That coverage was limited by the "shortest time" needed to repair the property, it was not necessarily limited to the first 12 months after the loss. (*Id*.) As

---

[2] "Actual cash value" is the depreciated value of the damaged property. Typically, insurers will pay the ACV first. Then, when the property is repaired or replaced, the insurer will pay the difference between the ACV and the actual cost incurred to replace the property, which is called

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 7

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

discussed above, after a severe loss a homeowner may need 10 to 12 months for repairs to be completed. (*See, e.g.*, Dkt. No. 22 at 21-22.) Sometimes the 12 months needed for repairs are in addition to the time necessary to complete an estimate of the cost of repairs. (*Id.*)

### G.    Even in this case, MetLife made at least one payment more than 12 months from the date of loss

MetLife continued to process and pay Farnes' insurance claim more than 12 months after the date of the loss. MetLife's issued supplemental payment of $3,133 to Farnes in January 2018, which was 15 months after the robbery. (Hanson Decl. Ex. D.) On February 21, 2018, MetLife sent a Proof of Loss form to Farnes for her to complete and return. (*See* Hanson Decl. Ex. E.) MetLife reissued the $3,133 payment around March 22, 2018, about 17 months after the robbery. (Hanson Decl. Ex. E.)

As reflected in the testimony of Forte, MetLife's continued processing of the claim after 12 months is the standard practice within the insurance industry. (Forte Decl. ¶ 10.)

### H.    After MetLife repeatedly refused payment, Plaintiff retained counsel and sent notice of violation of the Insurance Fair Conduct Act

After MetLife's May 25, 2018 letter rejected the Proof of Loss and denied payment, Farnes continued to contact MetLife and seek payment for the damaged items. (*See* Hanson Decl. Ex. F.) MetLife retained attorney Joseph Hampton and on July 11, 2018 he sent a letter to Farnes which directed her to stop contacting MetLife employees. (*Id.*) Hampton's letter enclosed a copy of MetLife's May 25, 2018 letter which had denied payment. (*Id.*)

---

the "replacement cost" (RC). The difference between the ACV and the RC is commonly referred to as the "withheld depreciation" or the "recoverable depreciation".

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 8

NO.  2:18-cv-01882-BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

Plaintiff retained the services of attorney Joel Hanson. On November 26, 2018, Hanson sent a letter to MetLife and the Office of the Insurance Commissioner which stated : "Notice is hereby given that MetLife violated the Insurance Fair Conduct Act (IFCA) by its unreasonable failure to promptly pay the full benefits owed under the policy." (Hanson Decl. Ex. G.)

Hampton responded to the IFCA letter on December 7, 2018. (Hanson Decl. Ex. H) Though Hampton was already aware of MetLife's May 25, 2018 denial letter, his letter complained: "Your letter does not provide any information to allow Metropolitan to determine what, if any, additional payment should be made to cure any deficiency and therefore avoid suit." (*Id*.) Hampton's letter further stated: "please identify any specific payment shortfall and provide proof of loss stemming from the event". (*Id*.) It was unclear whether MetLife was actually trying to cure the IFCA violation and pay for the property it had rejected in its May 25, 2018 denial letter.

Hanson responded on December 13, 2018 with a letter which confirmed that the IFCA violation arose from MetLife's May 25, 2018 denial letter. (Hanson Decl. Ex. I.) The December 13, 2018 letter gave MetLife another opportunity to cure the IFCA violation. (*Id*.) The letter stated: "If MetLife is sincere about wanting to cure any deficiency, please have MetLife send payment pursuant to the proof of loss and notify me that MetLife will resume paying the insurance claim." (*Id*.)

Hampton sent a letter on December 21, 2018 seeking the precise dollar amount that Farnes was owed pursuant to her Proof of Loss. (Hanson Decl. Ex. J.) MetLife's motion and the testimony of its counsel assert that "Ms. Farnes' attorney did not respond to this December 21,

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

2018 letter." (Dkt. No. 15 at 9, line 1; Dkt. No. 16 at 3, line 17.) This is false. Hanson sent a response by letter on December 27, 2018. (Hanson Decl. Ex. K.)

On December 27, 2018, Hanson communicated that he could not calculate the remaining amount owed by MetLife until Hampton communicated the precise amount MetLife had already paid for the personal property damage. (*Id.*) On January 4, 2018, Mr. Hampton responded that he was unable to provide that information without further investigating MetLife's file. (Hanson Decl. Ex. L.) On January 7, 2019, Hanson sent an email which asked, "Will [MetLife] be paying the claim based on the supplemental information?" (*Id.*) On January 7, 2019, Hampton confirmed that "MetLife is not retracting its prior position." (Hanson Decl. Ex. M.) This shows MetLife had no intention of curing its IFCA violation.

### III. ARGUMENT AND AUTHORITY

#### A.      Standard for summary judgment

A party is entitled to summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view the evidence and draw reasonable inferences from the evidence in the light most favorable to nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). To avoid summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, Plaintiff is the non-moving party. Accordingly, all reasonable inferences must be drawn in Plaintiff's favor.

#### B.      Plaintiff's legal claims are not barred by the 12-month contractual deadline

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 10

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

Plaintiff's legal claims in this matter are not time-barred under the terms of the contract. The subject insurance contract only bars a certain subset of actions: "any suit or action seeking coverage" filed after 12 months. Coverage for the burglary and vandalism has never been in dispute in this matter. Accordingly, this is not a "suit or action seeking coverage". Instead, this action seeks a remedy for MetLife's bad faith refusal to pay benefits owed under the contract.[3]

However, even if the subject 12-month lawsuit deadline was written broadly enough to include Farnes' legal claims in this matter, Washington law supersedes that 12-month deadline. *Simms v. Allstate Ins. Co.*, 27 Wash. App. 872, 878, 621 P.2d 155, 158 (1980)*; O'Neill v. Farmers Ins. Co. of Washington*, 124 Wash. App. 516, 531, 125 P.3d 134, 140–41 (2004). "[T]he 4-year statute of limitations in the Consumer Protection Act, RCW 19.86.120, and the act itself should not be frustrated by a limitations period required in all contracts of fire insurance." *Simms*, 27 Wash. App. at 878. Similarly, "the duty of good faith and fair dealing is not strictly a contractual obligation." *Id. See also*, *Andrews v. St. Paul Guardian Ins. Co.*, No. CV15-676 BJR, 2015 WL 4724574, at *2 (W.D. Wash. Aug. 9, 2015) (dismissing breach of contract claim but denying motion for summary judgment on bad faith and IFCA claims).

"[T]he suit-limitation clause does not affect Plaintiff's extra-contractual claims for bad faith, violation of the Consumer Protection Act (CPA), and violation of the Insurance Fair Conduct Act (IFCA)." *Collazo v. Balboa Ins. Co.*, No. C13-0892-JCC, 2014 WL 12042561, at *2 (W.D. Wash. Oct. 22, 2014). In *Collazo*, this Court found that the insurer's decision to withdraw from an appraisal process breached the contract even though a one-year contractual-

---

[3] MetLife may make the circular argument that, since it denied payment based on the 12-month lawsuit deadline, this is a lawsuit seeking coverage. But that argument is not sound. The insurance contract did not contain any provision which allowed MetLife to manufacture a non-existent coverage dispute in order to exercise the 12-month deadline on bringing an action to resolve coverage disputes. And there was no coverage dispute during the 12-months after the date of the loss.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 11

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

deadline for filing a lawsuit had already passed. "The question of whether Balboa breached the insurance contract is relevant for Collazo's extra-contractual claims, which have statutes of limitations for either three or four years. Because the relevant statutes of limitations for bad faith and violations of the CPA and IFCA have not expired, those claims are not time-barred." (*Id.*)

Therefore, pursuant to the above decisional law, Plaintiff Farnes may bring all of her extra-contractual claims because they are not time-barred. If the subject contractual suit-limitation applied to this action, Plaintiff might be time-barred from her breach of contract claim. However, as discussed above, the subject suit-limitation only applies to legitimate coverage disputes occurring during the first 12-months, which this action is not. So, none of Plaintiff's legal claims are time-barred.

**C.    Standards for interpreting insurance policies in Washington**

"The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton v. Consol. Ins. Co.,* 145 Wn.2d 417, 424, 38 P.3d 322 (2002).

Insurance policies must be "liberally construed in favor of a policyholder or beneficiary thereof, whenever possible, and strictly construed against the insurer in order to afford the protection which the insured was endeavoring to secure when he applied for the insurance." *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 64 Wn. App. 838, 855, 827 P.2d 1024 (1992), aff'd, 126 Wn.2d 50, 882 P.2d 703 (1994). "It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative." *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn. 2d 65, 68, 659 P.2d 509, 511 (1983). These rules favoring policyholders exist because insurance policies are contracts of adhesion and insurance companies are treated differently than other

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 12

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

litigants. *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn. 2d 303, 323, 88 P.3d 395, 403 (2004).

The terms of an insurance policy should be construed as a whole. *Panorama Vill. Condo. Owners Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 137, 26 P.3d 910 (2001). Where a policy is ambiguous on an issue, that ambiguity must be construed in favor of the insured. *Id*. Extrinsic evidence may also be used to resolve an ambiguity. *Id*. "The rule strictly construing ambiguities in favor of the insured applies with added force to exclusionary clauses which seek to limit policy coverage." *Findlay v. United Pacific Ins. Co.*, 129 Wn.2d 368, 374, 917 P.2d 116 (1996). "Where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of two constructions, the meaning and construction most favorable to the insured must be employed, even though the insurer may have intended otherwise." *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn. 2d 161, 167, 588 P.2d 208, 212 (1978). An insurer cannot deny payment based on contractual language that does not exist. *Weyerhaeuer Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 913, 874 P.2d 142, 154 (1994) ("We decline to add language to the words of an insurance contract that are not contained in the parties' agreement.")

### D.    MetLife breached the contract by wrongfully denying payment

MetLife's rejection of the Proof of Loss and inventory list breached the contract. MetLife relied solely on the 12-month deadline for "any suit or action seeking coverage". It is undisputed that the theft, vandalism, and "malicious mischief" were covered under the terms of the contract. Accordingly, there was no legitimate coverage dispute in this matter.

MetLife's motion asserts that, "any right that Ms. Farnes had to coverage benefits for this claim terminated on October 10, 2017." (Dkt. No. 15 at 19, lines 11-12.) But there was no

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 13

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.no

provision which excluded coverage for payments requested after 12 months from the date of loss.

While the contract barred certain lawsuits after 12 months, it did not bar the payment of the insurance claim after 12 months. Indeed, the contract contemplated that Replacement Cost payments could occur more than 12 months from the date of the loss.

The testimony of Forte, Dan Reist, and Christopher Pratt all confirm that homeowner insurance claims sometimes need more than 12 months to be resolved and fully paid. If MetLife's twisted interpretation of the policy were followed, it would set a disastrous precedent because it would allow insurers to deny payments on covered claims before those claims were resolved.

Even if the contract was somehow ambiguous and could be strained such that a 12-month deadline on lawsuits supported MetLife's position, the rule on ambiguities requires that the contract be interpreted in Farnes' favor. *Panorama*, 144 Wn.2d at 137. Moreover, the extrinsic evidence also supports Plaintiff's interpretation of the contract. The testimony in the record confirms that it is standard practice for insurers to continue payment of homeowner insurance claims after 12 months have passed. MetLife made such a payment to Farnes about 15 months after the date of the robbery.

**E.      MetLife's denial of payment was unreasonable and breached the duty of good faith**

MetLife's denial of payment based on the 12-month lawsuit limitation clause was unreasonable on its face. The lawsuit limitation clause did not bar payments after 12 months, it barred lawsuits concerning coverage disputes. MetLife made a tactical decision to refuse

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 14

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

payment because it hoped the 12-month lawsuit limitation might shield it from liability for bad faith conduct. That decision was not made in good faith.

An insurer is liable for bad faith if its actions were unreasonable, frivolous, or unfounded. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 916, 169 P.3d 1 (2007). Similarly, an insurer acts in bad faith when it places its own interests above the interests of its insured. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986). Whether an insurer acted in bad faith is generally a question of fact. *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 485, 78 P.3d 1274, 1277 (2003). The plaintiff does not need to prove the bad faith conduct was intentional. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wash. App. 736, 756, 87 P.3d 774, 786 (2004) ("The insurer's fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud.") The Washington pattern jury instructions reflect these rules. [4]

Here, MetLife unreasonably failed to follow its contractual and good faith obligation to pay for all the covered damage. It placed its own financial interest above the interest of Farnes and manufactured a dispute where no legitimate dispute existed.

Moreover, MetLife's mistreatment of Farnes during the insurance claim caused the delay in Farnes' submission of the inventory list. Farnes should not have needed to obtain

---

[4] WPI 320.02 provides: "An insurer has a duty to act in good faith. This duty requires an insurer to deal fairly with its insured. [The insurer must give equal consideration to its insured's interests and its own interests, and must not engage in any action that demonstrates a greater concern for its own financial interests than its insured's financial risk.] An insurer who does not deal fairly with its insured [, or who does not give equal consideration to its insured's interests,] fails to act in good faith. In proving that an insurer failed to act in good faith, an insured must prove that the insurer's conduct was [unreasonable] [frivolous] [or] [unfounded]. The insured is not required to prove that the insurer acted dishonestly or that the insurer intended to act in bad faith."

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 15

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

outside assistance from a public adjuster in order to receive instructions on how to generate a

sufficiently detailed list of stolen and damaged items. *See also*, WAC 284-30-360(4).[5] It was

unreasonable for MetLife to profit from its failure to assist its insured with her inventory list.

F. **MetLife violated the Washington Consumer Protection Act for the same reasons it breached the duty of good faith**

As discussed above, MetLife breached the duty of good faith because its denial of payment

was unreasonable. An insurer's breach of the duty of good faith constitutes a *per se* violation of the

Consumer Protection Act. (CPA). *Salois v. Mut. of Omaha Ins. Co.*, 90 Wn.2d 355, 359, 581 P.2d

1349 (1978). This is because, in Washington, insurance impacts the public interest as a matter of

law. RCW 48.01.030; *see also Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697-98,

17 P.3d 1229 (2001).[6] Accordingly, MetLife's bad faith denial also violated the CPA.

G. **MetLife's conduct violated the Washington Insurance Fair Conduct Act for the same reasons it breached the duty of good faith**

---

[5] "Upon receiving notification of a claim, every insurer must promptly provide necessary claim forms, instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements." WAC 284-30-360.

[6] As a matter of law, a single violation of any one of the WAC insurance regulations is an unfair or deceptive act or practice under the CPA. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 331, 2 P.3d 1029 (2000) citing *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 924, 792 P.2d 520 (1990). To prevail in a private CPA action, the plaintiff must show that the defendant's conduct met the elements of the *Hangman Ridge* five-part test: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) injuring plaintiff in his or her business or property, and (5) causation. *Hangman Ridge v. Safeco Title*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The first element is met by a violation of WAC 284-30-330 through 800. *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697, 17 P.3d 1229 (2001). The second and third elements are automatically met in the context of insurance because it is a business which affects the public interest. *See* RCW 48.01.030. Therefore, in Washington, to prove an insurer violated the CPA, the insured only has to show that the insurer breached one of more of the WAC regulations and that the insured was injured by that breach. *Osborn*, 104 Wn. App. at 697-98.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 16

NO.  2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

The IFCA provides that: "Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action". RCW 4.30.015(1). MetLife's use of the 12-month lawsuit provision to deny payment for an indisputably covered claim was an unreasonable denial of a benefit. The same conduct that breached the duty of good faith also constituted a violation of the IFCA.

### H.    Plaintiff gave sufficient notice of the IFCA violation

MetLife argues that Plaintiff failed to give notice of the IFCA violation and failed to allow MetLife to cure its deficiency. But MetLife had ample notice and opportunity to cure its deficiency.

Plaintiff's November 26, 2018 letter was sent 25 days before Plaintiff filed her IFCA claim in the first amended complaint. (Dkt. No. 1-3 at 5.) This was more than enough time to meet the 20-day statutory requirement.

Plaintiff's November 26, 2018 letter gave explicit written notice that MetLife had violated the IFCA by refusing to promptly pay the policy benefits. That letter identified the policy number, claim number, and other details of the claim. MetLife knew that it had explicitly denied payment of benefits in its May 25, 2018 letter. So, there was no mystery about the basis of Plaintiff's IFCA claim.

On December 7, 2018 MetLife's counsel asked for more information and, on December 13, 2018, Plaintiff's counsel confirmed that the IFCA violation arose from MetLife's May 25, 2018 denial of payment. That letter also stated, "to cure any deficiency, please have MetLife send payment pursuant to the proof of loss and notify me that MetLife will resume paying the insurance claim." MetLife again declined to cure its deficiency. Plaintiff filed her IFCA claim

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 17

NO. 2:18−cv−01882−BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

on December 20, 2018. MetLife subsequently confirmed in writing that it would not reverse the position reflected in its May 25, 2018 denial letter.

MetLife has not identified any authority which supports its argument that Plaintiff's communications were insufficient under the IFCA. MetLife's motion cites *Cardenas v. Navigators Ins. Co.*, 2011 WL 6300253, at *6 (W.D. Wash. Dec. 16, 2011) and *Norgal Seattle P'ship v. National Sur. Corp.*, 2012 WL 1377762, at *4 (W.D. Wash. Apr. 19, 2012). But in *Cardenas* the IFCA notice was sent less than 20 days before the IFCA complaint was filed with the court. And in *Norgal* the IFCA dispute was cured because the insurer immediately began processing the insurance claim in response to the IFCA notice.

MetLife had sufficient notice that Plaintiff intended to challenge its denial of benefits pursuant to the IFCA. This is all that was required by the statute. Moreover, MetLife's objection to Plaintiff's IFCA notice is disingenuous because it never intended to cure its May 25, 2018 denial of benefits. MetLife explicitly stated it was not reversing its position concerning its denial.

## I.      Plaintiff was injured by the denial of benefits

MetLife argues that Plaintiff did not suffer any injury caused by MetLife's May 25, 2018 denial of payment for her Proof of Loss and inventory list. That is incorrect.

MetLife's records indicate it has only paid $80,236 for the personal property damage and theft. Plaintiff's inventory list, generated with the help of a licensed public adjuster, showed she had actually suffered a total of $165,905 for her personal property loss. MetLife injured Plaintiff by denying payment based on that information.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 18

NO.  2:18−cv−01882−BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

### J.     Plaintiff needs more time to discover additional evidence supporting her claims

Plaintiff's legal claims are well-founded and MetLife's May 25, 2018 denial of payment was plainly wrongful and unreasonable. However, to the extent that this Court believes additional evidence is necessary to support Plaintiff's claims, MetLife's motion for summary judgment should be denied pursuant to Fed. R. Civ. P. 56(d).

As previously addressed in Plaintiff's motion for more time, counsel for Plaintiff believes that additional evidence exists in support of Plaintiff's legal claims. (Dkt. No. 22.)  Plaintiff has not yet taken any depositions in this matter. MetLife refused to appear for its deposition on the basis that it objects to the listed deposition topics. MetLife has produced a file of about 6,000 pages of documents relating to the insurance claim, many of which are duplicative. Counsel for Plaintiff has not yet had time to closely review that entire file. And it is not yet known whether that is a complete production of the discoverable documents requested by Plaintiff. (Hanson Decl. ¶ 17.)

Testimony from MetLife and its employees will likely support Plaintiff's allegations. (Hanson Decl. ¶ 18.) That testimony will also help Plaintiff to reconstruct the events of the insurance claim and provide context for the documents produced by MetLife. For example, Farnes has alleged and testified that she was treated unfairly by MetLife during the first 12 months of the insurance claim. But she is not an insurance professional and she is not an attorney. Like most homeowners, she has no knowledge of insurance law. In order for Plaintiff to present her arguments in more detail Plaintiff's counsel needs time to investigate this case,

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT — 19

NO. 2:18–cv–01882–BJR

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

obtain and review records, and take the depositions of the central MetLife employees involved

in the claim. (*Id.*)


            DATED this 2nd day of May 2019.


                                        JOEL B. HANSON, ATTORNEY AT LAW, PLLC

                                        __/s  Joel Hanson_____
                                        Joel B. Hanson, WSBA #40814
                                        Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ANNELISE FARNES, a person,<br><br>     Plaintiff,<br><br>  v.<br><br>METROPOLITAN GROUP PROPERTY<br>AND CASUALTY INSURANCE<br>COMPANY, dba as MetLife, an insurance<br>company,<br><br>     Defendant. | NO.  2:18−cv−01882−BJR<br><br><br>**(proposed) ORDER DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT** |

   This matter came before the Court on Defendant's Motion for Summary Judgment. Having reviewed all the briefing and materials submitted for and against Defendant's Motion,

   **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is DENIED.

   DATED this _____ day of _____, 2019.


           _____
           The Honorable Barbara J. Rothstein

ORDER — 1

NO.  2:18−cv−01882−BJR

PRESENTED BY:

JOEL HANSON, ATTORNEY AT LAW, PLLC


/s/  Joel Hanson
Joel B. Hanson, WSBA #40814
Attorney for Plaintiffs

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
13540 LAKE CITY WAY NE, # 120
SEATTLE, WA 98125
joel@joelhansonlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

**The Honorable Barbara J. Rothstein**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ANNELISE FARNES, a person,

             Plaintiff,

    v.

METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE
COMPANY, dba as MetLife, an insurance
company,

             Defendant.

NO.  2:18−cv−01882−BJR

**CERTIFICATE OF SERVICE**

15

16

17

18

19

20

21

22

23

24

25

      Under penalty of perjury under the laws of the State of Washington, I declare that on this 2nd day of May 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system with which will send notification of such filing to the following:

Joseph D. Hampton, WSBA #15297
Michelle E. Kierce, WSBA #48051
Betts, Patterson & Mines, P.S.
One Convention Place, Suite 1400
701 Pike Street
Seattle WA 98101-3927
Telephone: (206) 292-9988
E-mail: jhampton@bpmlaw.com

       /s/ Joel Hanson
Joel Hanson

CERTIFICATE OF SERVICE — 1

NO.  2:18−cv−01882−BJR