UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNELISE FARNES,

    *Plaintiff*,

v.

METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE
COMPANY,

    *Defendant*.

CASE NO. 2:18-cv-1882-BJR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S RENEWED FEDERAL RULE 56(d) MOTION

## I. INTRODUCTION

Plaintiff Annelise Farnes ("Plaintiff") instituted this action against Defendant Metropolitan Group Property and Casualty Insurance Company ("MetLife"), alleging that MetLife wrongfully denied payment under her insurance policy. Plaintiff brings claims for breach of contract, bad faith, and violation of Washington's Consumer Protection and Insurance Fair Conduct Acts. Dkt. No. 1, Ex. 3. MetLife moves this Court for summary judgment on Plaintiff's claims. Dkt. No. 15. Plaintiff opposes the motion. Dkt. No. 24. Having reviewed the

1

motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.[1]

## II. BACKGROUND

Plaintiff purchased a homeowner's insurance policy from MetLife with a policy term of October 9, 2016 to October 9, 2017. Dkt. No. 16, Ex. 1 at 2. The policy insured against losses to Plaintiff's dwelling as well as personal property. In addition, the policy provided for alternative living expenses should such an arrangement become necessary due to an insured loss. Relevant here, the policy also contained a twelve-month suit limitation clause, which contractually limits the time within which Plaintiff can bring a lawsuit against MetLife seeking coverage. Specifically, the policy provides that "any suit or action seeking coverage must be brought within twelve months of the loss." *Id*. at Ex. 2.

Plaintiff's home was burglarized on October 10, 2016, one day after the insurance policy went into effect. Plaintiff reported the break-in to the police and subsequently completed a Theft Inventory List in conjunction with the police report she filed with the Puyallup Police Department. Dkt. No. 16, Ex. 4. Plaintiff also reported the break-in to MetLife and the company opened a claim. *Id*. at Ex. 10. It paid for Plaintiff to stay in a hotel that night and she continued to stay at the hotel until February 22, 2017 when Plaintiff was finally able to return to her house. *Id*. at Ex 5. As of March 7, 2017, MetLife had paid Plaintiff a total of $142,936.69 for losses she suffered due to the break-in ($24,222.05 (dwelling coverage), $80,236.41 (personal property), and $38,478.23 (loss of use)). *Id*. MetLife paid the full amount claimed by Plaintiff as of March

---

[1] In her opposition to the summary judgment motion, Plaintiff renews her Federal Rule 56(d) motion that this Court previously denied. For the reasons discussed *infra*, the Court will deny Plaintiff's renewed motion.

7, 2017 and did not deduct for depreciation. *Id.* at Exs. 5-6, 8, and 10. MetLife "considered the claim closed by mid-March, 2017." *Id.* at Exs. 5 and 10.

However, on December 1, 2017, MetLife received an email from Choice Carpentry, which enclosed a $45,531.56 estimate for a kitchen remodel at Plaintiff's house. *Id.* at Ex. 9. The estimate included replacement of all kitchen cabinets, nine interior oak doors, a screen door, quartz countertops, kitchen backsplash, carpentry hardware, and other miscellaneous items. *Id.* MetLife did not believe that the foregoing work was related to the break-in and thus requested an opportunity to reinspect Plaintiff's home. During this inspection, Plaintiff pointed out various items that she felt still needed to be repaired from the break-in and MetLife issued a supplemental check in the amount of $3,133.97 on January 1, 2018. *Id.* at Ex. 10 at 2.

On January 3, 2018, MetLife received another estimate from Choice Carpentry in the amount of $9,826.96, which related to replacing the tile flooring in the kitchen and the vinyl flooring in the bathroom with engineered wood flooring. *Id.* On February 21, 2018, MetLife informed Plaintiff it would not make additional payments for the work outlined in the Choice Carpentry estimates because there was no evidence that the damage caused by the October 2016 break-in necessitated the work outlined in the estimates. *Id.* at 1-3. MetLife also pointed out that it had already paid for repairs to Plaintiff's kitchen following the break-in and it was not required to pay twice for the same repairs. *Id.* at 3. Lastly, MetLife informed Plaintiff that its policy does not require it to pay for "upgrades" such as those contemplated by the Choice Carpentry estimates. *Id.* For instance, MetLife pointed out, at the time of the break-in Plaintiff's kitchen cabinets were made of plywood with a wood-grain plastic veneer, but the Choice Carpentry estimate called for solid oak cabinets. Likewise, at the time of the break-in, Plaintiff's countertops were laminate-surfaced wood, but the estimate was for quartz countertops. *Id.*

3

MetLife invited Plaintiff to submit a Sworn Statement in Proof of Loss ("Proof of Loss") or utilize the appraisal process outlined in the policy if Plaintiff disputed MetLife's denial. *Id*. Thereafter, on March 18, 2018, Plaintiff emailed MetLife requesting that it extend the twelve-month suit-limitation period that had expired on October 10, 2017. Plaintiff also requested that MetLife extend the deadline to file the Proof of Loss by another sixty days. Dkt. No. 16, Ex. 11. MetLife declined to do either. *Id*.

On April 19, 2018, Plaintiff submitted a Proof of Loss form; the only losses listed on the form related to alleged personal property damages, not damage to her dwelling. Dkt. No. 16, Ex. 12. Plaintiff claims that the total cost to repair or replace the items on her Proof of Loss form is $165,905.23. *Id*. MetLife alleges that it had already paid for most of the items listed on the Proof of Loss form as part of the $142,936.69 payments it made by March 7, 2017. It also claims that there are duplicate items on the form. On May 25, 2018, MetLife informed Plaintiff that it rejected her Proof of Loss claims and would deny further payment for claims based on the October 10, 2016 break-in due to the one-year suit limitation clause in its policy. *Id*. Thereafter, Plaintiff instituted this action.[2]

### III. STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *See Crawford–El v. Britton*, 523 U.S. 574,

---

[2] Plaintiff originally filed this action in King County Superior Court; MetLife removed the action to this Court on December 28, 2018. *See* Dkt. No. 1.

4

600 (1998); *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Simply put, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury. *Bradley v. Rohlfing*, 2015 WL 6502450, *2 (E.D. Cal. October 27, 2015).

## IV. DISCUSSION

Plaintiff instituted this lawsuit against MetLife on November 29, 2018 with a sparse, three-page complaint that contained three counts: (1) breach of contract, (2) bad faith, and (3) violation of Washington's Consumer Protection Act. Dkt. No. 1, Ex. 2. Plaintiff filed an amended complaint on December 20, 2018. *Id*. at Ex. 3. The amended complaint is equally sparse but adds a fourth count: violation of Washington's Insurance Fair Conduct Act. MetLife claims that it is entitled to summary judgment on all four of these counts; Plaintiff disagrees. The Court will address each in turn.

### A. The Breach of Contract Claim is Barred by the Policy's Twelve-Month Suit Limitation Clause

As stated above, the insurance policy at issue in this lawsuit contains a twelve-month suit limitation clause, which provides that: "any suit or action seeking coverage must be brought within twelve months of the loss." Dkt. No. 16, Ex. 2. The parties agree that the date of the loss as it applies to the twelve-month suit limitation clause is the date of the break-in: October 10, 2016. Thus, Plaintiff was contractually required to bring her lawsuit no later than October 10, 2017. Plaintiff initiated this lawsuit on November 29, 2018, over a year after the twelve-month suit limitation clause expired. Therefore, MetLife argues, Plaintiff's lawsuit is time-barred.

Plaintiff counters that her breach of contract claim is not time-barred because the twelve-month suit limitation clause only applies to coverage disputes. According to Plaintiff, here, there is no dispute that the insurance policy *covers* the losses caused by the break-in; the only dispute

is whether Plaintiff is entitled to a supplemental *payment* for the itemized losses she included in the April 19, 2018 Proof of Loss form. Stated differently, Plaintiff contends that the twelve-month suit limitation clause is not applicable to her lawsuit because this is not a lawsuit for coverage; it is a lawsuit for additional payment for losses that the parties already agree are covered losses.

Plaintiff is mistaken. As an initial matter, this Court notes that suit limitation provisions in insurance policies have been enforced by Washington courts since at least 1923. *See*, *e.g.*, *Hefner v. Great Am. Ins. Co.*, 126 Wn. 390, 391 (1923) ("We have uniformly held that a clause in such a contract fixing a limitation of the time in which suit is sustainable is a valid one."). The Ninth Circuit has noted that the purpose of suit limitation clauses is to "preclude stale claims, require the insured's diligence, and prevent fraud." *Keller v. Federal Insurance Company*, 765 Fed. Appx. 271, 272 (9th Cir. 2019).

Here, contrary to what Plaintiff suggests, MetLife does dispute that the supplemental claims Plaintiff filed after the expiration of the twelve-month suit limitations clause are covered losses. With respect to the estimates from Choice Carpentry, in a letter to Plaintiff dated February 21, 2018, MetLife denied the claim because there is "no evidence that the damage caused by the October 2016 break in would require replacement of all of [Plaintiff's] kitchen cabinets and countertops, or flooring." Dkt. No. 16, Ex. 10. MetLife also noted that the "policy does not require repeated payments for the same damage," nor does it require MetLife to "pay for upgrades, such as the remodeling and re-flooring contemplated by the Choice Carpentry bids." *Id.* As for the personal property listed in the April 19, 2018 Proof of Loss form submitted by Plaintiff, MetLife alleges that it declined coverage for the items listed on the form because it included duplicate items, items for which MetLife had already compensated Plaintiff, and items

that Plaintiff had never reported as damaged or stolen despite preparing a detailed inventory for the police department and despite meeting with MetLife representatives multiple times in the months after the break-in.[3]

Thus, MetLife unquestionably disputes that the work contemplated by the Choice Carpentry estimates as well as the items included on the April 19, 2018 Proof of Loss form are covered losses to which Plaintiff is entitled to additional payment. Per the policy's twelve-month suit limitation clause, any lawsuit seeking coverage of the disputed losses must have been filed on or before October 10, 2017. Because Plaintiff did not file this lawsuit until well-beyond the expiration of the twelve-month suit limitation period, her breach of contract claim is barred as a matter of law.

### B. There Is No Dispute of Material Fact as to Whether MetLife Acted in Bad Faith

Next Plaintiff charges that MetLife acted in bad faith with respect to processing her insurance claim. Under Washington law, "an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *HB Development, LLC v. Western Pacific Mut. Ins.*, 86 F. Supp. 3d 1164, 1182 (E.D.W.A. 2015) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274 (Wash. 2003) (en banc)). "Claims of bad faith are not easy to establish and an insured has a heavy burden to meet." *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002). "To succeed on a bad faith claim, the policyholder must show the insurer's breach

---

[3] MetLife also claims that Plaintiff has reached the coverage limit on several categories for personal property. Therefore, MetLife alleges, even if Plaintiff had presented a valid new claim for a piece of jewelry, memorabilia, or collectible, it would not have resulted in an additional payment because MetLife had already paid the coverage limits for these categories. However, in making this claim, MetLife simply refers the Court to a spreadsheet with 79 items personal property items listed for which it presumable compensated Plaintiff. *See* Dkt. No. 16, Ex. 13. There is no way for the Court to ascertain from this list whether MetLife "already paid the coverage limits" on certain categories of personal property as MetLife alleges. Therefore, the Court disregards this allegation.

of the insurance contract was 'unreasonable, frivolous, or unfounded.'" *HB Development*, 86 F. Supp. 3d at 1183 (quoting *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124 (Wash. 1998)).

"Whether an insurer acted in bad faith is generally a question of fact." *Sharbono v. Universal Underwriters Ins. Co.*, 161 P.3d 406, 410 (Wash. Ct. App. 2007)). Thus, "an insurer is only entitled to ... dismissal on summary judgment of a policyholder's bad faith claim if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances ...." *HB Development*, 86 F. Supp. 3d at 1183 (quoting *Sharbono*, 161 P.3d at 410)) "The insured does not establish bad faith when the insurer denies coverage … based upon a reasonable interpretation of the insurance policy." *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 285 P.3d 892, 899 (Wash.Ct.App. 2012). The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. *Smith*, 78 P.3d at 1277.

Plaintiff alleges that MetLife acted in bad faith by: (1) repeatedly pressuring Plaintiff to move back into her home before "it was completely repaired 100%" [Dkt. No. 24, Ex. 1 at ¶ 6]; (2) refusing to help Plaintiff list the damaged and stolen items, including determining a fair price for the items [*Id.*]; and (3) evoking the twelve-month suit limitation clause to deny coverage for the items listed on the April 19, 2108 Proof of Loss form and for the work contemplated by the two estimates from Choice Carpentry.

The Court will address Plaintiff's third allegation first. With respect to the third allegation, Plaintiff argues: "MetLife's denial of payment based on the 12-month lawsuit limitation clause was unreasonable on its face. The lawsuit limitation clause did not bar payments after 12 months, it barred lawsuits concerning coverage disputes." Dkt. No. 24 at 22. This argument fails for the reasons discussed *supra*. MetLife disputes that the losses for which

8

Plaintiff seeks additional payment are covered losses. Thus, any lawsuit seeking coverage for those losses must have been brought within twelve-months of the loss. Plaintiff failed to do so; therefore, MetLife's denial based on the twelve-month suit limitation clause was reasonable. Thus, MetLife's invocation of the suit limitation clause cannot be the basis for Plaintiff's bad faith claim. *See Overton*, 38 P.3d at 329 ("If the insurer's denial of coverage is based on a reasonable interpretation of the insurance policy, there is no action for bad faith.").

Nor can Plaintiff's remaining two allegations be a basis for Plaintiff's bad faith claim. First, while Plaintiff alleges that MetLife "harassed" her to return to her home before the house was completely repaired, Plaintiff does not allege that she actually returned to her home earlier than she wanted to. In fact, the record establishes that Plaintiff stayed in a hotel the night of the break-in and remained in the hotel for 135 nights until February 22, 2017 when she moved back into her house. Dkt. No. 16, Ex. 5 at METCLAIM_002684. Plaintiff also concedes that MetLife compensated her for the expenses associated with her hotel stay. Dkt. No. 24, Ex. 1 at ¶ 6. Thus, this allegation cannot be a basis for Plaintiff's bad faith claim. *See*, *e.g.*, *Newmont USA Ltd v. American Home Assur. Co.*, 676 F. Supp. 2d 1146, 1164 (W.D. Wash. 2009) (noting that harm is an "essential element of an action for bad faith handling of insurance claim").

Plaintiff's final allegation is that MetLife's "mistreatment of [Plaintiff] during the insurance claim caused the delay in [Plaintiff's] submission of the inventory list." Dkt. No. 24 at 15. Plaintiff asserts that if MetLife had assisted her in completing the inventory list, she would have "been able to submit her inventory list within the first 12-months after the robbery." Dkt. No. 24, Ex. 1 at ¶ 9. Plaintiff alleges that MetLife's failure to assist her with completing the inventory list runs afoul of WAC insurance regulation 284-30-360(4), which provides "[u]pon receiving notification of a claim, every insurer must promptly provide necessary claim forms,

instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements."

The record evidence with respect to this allegation is as follows:

(1) the insurance policy requires Plaintiff to "prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item" [Dkt. No. 29, Ex. 1(emphasis in original)];

(2) MetLife sent Plaintiff a spreadsheet on which to itemize the items that she claims were stolen and/or damaged during the break-in, but Plaintiff felt "it was not clear what information [she] needed to put in it for each item" on the spreadsheet [Dkt. No. 24, Ex. 1 at ¶ 7];

(3) Plaintiff compiled a list of stolen and/or damaged items for the police department, which included the quantity, description, brand name, color, and value of each item [Dkt. No. 16, Ex. 4];

(4) MetLife informed Plaintiff that the inventory she prepared for the police was "all tha [*sic*] [MetLife] need[s] to handle [Plaintiff's] claim" [Dkt. No. 29, Ex. 2];

(5) on December 9, 2016, MetLife sent Plaintiff a letter requesting that she complete a Proof of Loss form related to the break-in—the letter included a blank Proof of Loss form as well as detailed written instructions on how to complete the form [Dkt. No. 29, Ex. 4];

(6) MetLife alleges that upon receiving the Proof of Loss form, Plaintiff expressed confusion on how to complete the form, so she requested that a MetLife agent meet with her at her house to discuss the form, which MetLife agreed to do[4];

(7) on January 17, 2017 an agent from MetLife met with Plaintiff (as well as Plaintiff's son and wife) to reinspect Plaintiff's home. The agent "[w]ent through entire inventory line by line with [Plaintiff]…Clarifi[ng[ ages, condition, and values." [Dkt. No. 29, Ex. 3];

(8) Plaintiff met with a MetLife agent on February 18, 2017 and based on that meeting, MetLife updated Plaintiff's "contents/personal property evaluation" [Dkt. No. 16, Ex. 6];

(9) on April 11, 2017 Plaintiff emailed MetLife and asked for "a detailed description of each item met life [*sic*] paid and how much" [Dkt. No. 16, Ex. 7];

(10) on April 17, 2017 MetLife responded to Plaintiff's April 11, 2017 email, attaching "the last payment letter, estimate, and contents evaluation", which "provide the detailed description of the damages that were paid for" [*Id*.]; and

(11) per Plaintiff's request, on July 19, 2017 MetLife provided Plaintiff with a "Statement of Loss" that summarized the "claim amount, payment amount, date of payment, [and] check number, listed by coverage" [Dkt. No. 16, Ex. 8].

The record evidence demonstrates that MetLife satisfied its first two obligations under WAC 284-30-360(4)—it provided Plaintiff with the requisite forms and instructions. The only

---

[4] MetLife does not cite to evidence in the record that supports this allegation. However, the Court notes that MetLife's internal emails [Dkt. No. 29, Ex. 2] indicate that someone from MetLife identified only as "Zook, T" claimed to have received a phone call from Plaintiff on December 30, 2016 in which Plaintiff allegedly requested a meeting on "Friday at 11:00AM" to which "Zook, T" agreed.

11

question is whether MetLife also provided Plaintiff with "reasonable assistance" as required by the insurance regulation. The parties do not cite to any caselaw on this issue. Nevertheless, taking the record evidence in this case and construing it in Plaintiff's favor, this Court concludes that a reasonable jury could not find that MetLife's actions were unfair or deceptive. To the contrary, MetLife sent Plaintiff the required forms with accompanying instructions, responded to Plaintiff's many phone calls and emails, agreed to meet with Plaintiff at her house when she requested, began making payments on the damaged personal property inventoried in the police report, reviewed the inventoried property with Plaintiff and her son, and repeatedly provided Plaintiff detailed summaries of amount and items for which MetLife had paid. Indeed, after receiving the first invoice from Choice Carpentry on December 1, 2017, and even though MetLife did not believe the items called for in the estimate related to the break-in, MetLife agreed to reinspect Plaintiff's home on December 15, 2017. Based on that inspection, it issued a supplemental payment in the amount of $3,133.97 for items Plaintiff believed she had not been compensated for by MetLife's previous payments. Dkt. No. 16, Ex. 10. Simply put, Plaintiff has not presented any evidence that would lead a reasonable jury to conclude that MetLife acted in bad faith towards Plaintiff. *See Taylor v. Sentry Grp. Of Companies*, 331 Fed. Appx. 457, 459 (9th Cir. 2009) (stating that a "claim of bad faith must be supported by evidence of deception, dishonestly, or intentional disregard for the insured's interest"). MetLife is entitled to summary judgment on Plaintiff's bad faith claim.

**C.     Plaintiff's Consumer Protection Act and Insurance Fair Conduct Act Claims**

Plaintiff alleges that MetLife violated Washington's Consumer Protection Act by breaching its duty of good faith to her. Because this Court has already concluded that MetLife is

entitled to summary judgment on Plaintiff's bad faith claim, Plaintiff's claim based on the Consumer Protection Act must also be dismissed.

Plaintiff also asserts that MetLife violated the Insurance Fair Conduct Act ("IFCA") by unreasonably denying Plaintiff's claim. Specifically, Plaintiff charges that "MetLife's use of the 12-month lawsuit provision to deny payment for an indisputably covered claim was an unreasonable denial of a benefit." Dkt. No. 24. This is the only basis for Plaintiff's IFCA claim. Because this Court has already concluded that MetLife's reliance on the twelve-month suit limitation clause was a reasonable basis for denying Plaintiff's claim, the IFCA claim must also be dismissed.

### D. Plaintiff's Renewed Motion under Federal Rule 56(d)

The same day that MetLife filed its motion for summary judgment, Plaintiff filed a motion for additional time to respond to the motion, pursuant to Federal Rule of Civil Procedure 56(d). Dkt. No. 17. This Court ordered briefing on the motion, and after reviewing the briefs, denied the motion because Plaintiff failed to make the requisite showing for relief under Federal Rule 56(d). Plaintiff now renews her Federal Rule 56(d) motion in her opposition to MetLife's summary judgment motion. In support of her motion, Plaintiff claims that she has not yet taken any depositions in this case nor has her attorney had an opportunity to review the "6,000 pages of documents relating to the insurance claim", which MetLife produced during discovery. Dkt. No. 24 at 19.

Federal Rule 56(d) provides a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). If a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's

opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. *See* Fed.R.Civ.P. 56(d); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." *Id*. at 853.

A Federal Rule 56(d) motion may be properly denied where the moving party has been dilatory in her actions. *Slama v. City of Madera*, 2012 WL 1067198, *2 (E.D.C.A. March 28, 2012). This Court concludes that Plaintiff's counsel has been less than diligent in this action. Plaintiff's counsel complains that he has not had an opportunity to review the large number of documents MetLife served during discovery. This is not a reason to grant a Rule 56(d) motion. A Rule 56(d) motion is meant to give the non-moving party the opportunity to elicit discovery, not to review the discovery already in its possession. What is more, while Plaintiff's counsel complains about the volume of documents, he admits that many are duplicates, which, of course, shortens the amount of time needed to review the documents. Lastly, Plaintiff's counsel concedes that he had the documents in his possession for a month at the time of filing the original Rule 56(d) motion. *See* Dkt. No. 22 at 2.

Further, the Court notes that Plaintiff's original Rule 56(d) motion sought a four-week extension within which to conduct additional discovery. Dkt. No. 17. As of the date of this order, the summary judgment motion has been ripe for over two months, well beyond the four weeks Plaintiff's counsel originally requested, and plenty of time within which Plaintiff could have conducted further discovery, including depositions, and seek leave to file a supplemental

response to the summary judgment motion if necessary. No such pleading was filed.[5]

Accordingly, the Court denies Plaintiff's renewed Rule 56(d) motion.

## V. CONCLUSION

Based on the foregoing, the Court HEREBY GRANTS MetLife's motion for summary judgment and DENIES Plaintiff's renewed Federal Rule 56(d) motion. The case is HEREBY DISMISSED.

Dated this 31st day of July, 2019.

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[5] Indeed, this Court previously denied Plaintiff's motion to compel a 30(b)(6) deposition of MetLife, noting that Plaintiff's proposed areas of examination were so "overbroad and over-generalized" that it was "difficult to see how [MetLife] could possibly prepare for the deposition." Dkt. No. 32 at 1. In denying the motion to compel, the Court invited Plaintiff to re-note the 30(b)(6) deposition no later than May 31, 2019. *Id*. at 2. Given this timeframe, Plaintiff had ample opportunity to depose MetLife and file a supplemental opposition to the summary judgment motion if warranted by the deposition testimony.

15